

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| RICHARD BERNARD MOORE, | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO.: 4:14-04691-MGL |
| | § | |
| BRIAN P. STIRLING, Commissioner, | § | |
| South Carolina Department of Corrections, | § | |
| and WILLIE D. DAVIS, Warden of Kirkland | § | |
| Reception and Evaluation Center, | § | |
| Respondents. | § | |

ORDER ADOPTING THE REPORT AND RECOMMENDATION,
GRANTING IN PART AND DENYING IN PART
RESPONDENTS' MOTION TO STRIKE,
GRANTING RESPONDENTS' MOTION FOR SUMMARY JUDGMENT,
DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS,
AND DENYING PETITIONER'S MOTION FOR A HEARING AND MOTION TO STAY

I.      INTRODUCTION

This is a capital habeas corpus action brought under 28 U.S.C. § 2254. Petitioner

Richard Bernard Moore ("Petitioner") filed a petition for writ of habeas corpus on August 14,

2015. ECF No. 43. On November 16, 2015, Respondents filed a motion for summary judgment,

ECF No. 57, and return and memorandum in support, ECF No. 56. On August 11, 2017,

Petitioner filed a Traverse and Memorandum of Law in opposition to summary judgment, ECF

No. 95; Respondents replied on September 1, 2017, ECF No. 104.

On August 11, 2017, Petitioner filed a motion for hearing. ECF No. 96. Respondents responded on September 1, 2017. ECF No. 108. On September 15, 2017, Petitioner replied. ECF No. 116.

In addition to their reply in support of their motion for summary judgment, Respondents filed a motion to strike on September 1, 2017. ECF No. 106. Petitioner filed a response in opposition on September 15, 2017. ECF No. 115. On September 29, 2017, Respondents replied, ECF No. 123, and on October 2, 2017, they filed an Amended Reply, ECF No. 125.

On September 15, 2017, Petitioner filed a motion to stay. ECF No. 117. Respondents filed a response in opposition on September 29, 2017. ECF No. 124. On October 5, 2017, Petitioner replied. ECF No. 130.

On December 28, 2017, the Magistrate Judge issued a Report and Recommendation ("Report") recommending Respondents' motion to strike be granted in part and denied in part, Respondents' motion for summary judgment be granted, and Petitioner's motion for hearing and motion to stay be denied. ECF No. 136. On January 25, 2018, Petitioner filed objections to the Report, ECF No. 140, to which Respondents replied on February 7, 2018, ECF No. 143. On February 20, 2018, Respondents filed additional briefing regarding Ground Four of Petitioner's petition for writ of habeas corpus. ECF No. 146. Petitioner declined to file an additional reply.

Having reviewed the Report, Petitioner's objections, Respondents' reply and additional briefing, the record, and the relevant case law, the Court will overrule Petitioner's objections and adopt the Report. The Court will thus grant in part and deny in part Respondents' motion to strike, grant Respondents' motion for summary judgment, deny Petitioner's petition for writ of habeas corpus, and deny Petitioner's motion for hearing and motion to stay.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In his Report, the Magistrate Judge provides a thorough recitation of the factual and procedural history in this case. That history is uncontested; the sole exception is Respondents' noting the Report incorrectly named the attorney who represented the State during direct appeal of the underlying case, ECF No. 143 at 10. Thus, because the pertinent history is uncontested, the Court draws heavily from that history in the following section.

> The charges in this case stem from the September 16, 1999, armed robbery of Nikki's, a convenience store on Highway 221 in Spartanburg. According to Terry Hadden, an eyewitness, [Petitioner] Moore walked into Nikki's at approximately 3:00 a.m. and walked toward the cooler. Hadden was playing a video poker machine, which he did routinely after working his second shift job. Hadden heard Jamie Mahoney, the store clerk, yell "What the hell do you think you're doing?" Hadden turned from the poker machine to see Moore holding both of Mahoney's hands with one of his hands. Moore turned towards Hadden, pointed a gun at him, and told him not to move. Moore shot at Hadden, and Hadden fell to the floor and pretended to be dead. After several more shots were fired, Hadden heard the doorbell to the store ring. He heard Moore's pickup truck and saw him drive off on Highway 221. Hadden got up and saw Mahoney lying face down, with a gun about two inches from his hand; he then called 911. Mahoney died within minutes from a gunshot wound through his heart. A money bag with $1408.00 was stolen from the store.
>
> Shortly after the incident, Deputy Bobby Rollins patrolled the vicinity looking for the perpetrator of the crime. Approximately one and one-half miles from the convenience store, Deputy Rollins took a right onto [a street], where he heard a loud bang, the sound of Moore's truck backing into a telephone pole. He turned his lights and saw Moore sitting in the back of a pickup truck bleeding profusely from his left arm. As Deputy Rollins ordered him to the ground, Moore advised him, "I did it. I did it. I give up." A blood covered money bag was recovered from the front seat of Moore's pick-up truck. The murder weapon, a .45 caliber automatic pistol, was found on a nearby highway shortly before daylight.

ECF No. 136 at 2-3 (quoting *State v. Moore*, 593 S.E.2d 608, 609-10 (S.C. 2004)).

On January 13, 2000, the Spartanburg County, South Carolina, grand jury indicted

Petitioner for one count of murder, one count of possession of a firearm during the commission of a violent crime, and one count of assault with intent to kill (AWIK). Thereafter, the State filed a Notice of Intent to Seek the Death Penalty. On October 4, 2001, the Spartanburg County grand jury indicted Petitioner on one count of armed robbery.

Then-Circuit Court Judge Gary E. Clary presided over Petitioner's trial. Appointed counsel Michael Morin and R. Keith Kelly represented Petitioner. Then-Seventh Circuit Solicitor Harold W. "Trey" Gowdy, III, and then-Assistant Solicitors Barry J. Barnette and James Donald "Donnie" Willingham, II, represented the State. On October 15, 2001, voir dire was held, and a panel of jurors selected. Moore's capital jury trial was held from October 18 to October 20, 2001. On October 20, 2001, the jury returned a verdict finding Petitioner guilty on each of the indicted offenses.

On October 22, 2001, Judge Clary presided over the sentencing phase of Petitioner's trial before the same jury. Judge Clary submitted the following statutory aggravating factors to the jury:

> 'That the defendant, Richard Bernard Moore, did murder James Mahoney while in the commission of the crime or act of robbery while armed with a deadly weapon; two, that the defendant, Richard Bernard Moore, did by his act of murder knowingly create a great risk to more than one person in a public place by means of a weapon or device which normally would be hazardous to the lives of more than one person; and three, that the defendant, Richard Bernard Moore, committed the murder of James Mahoney for himself or another for the purpose of receiving money or a thing of monetary value.'

ECF No. 63-6 at 242:22-243:7 (quotation in original). The jury found the existence of each of the statutory aggravating factors and recommended Petitioner be sentenced to death. Judge Clary sentenced Petitioner to death on the murder charge, to consecutive sentences of five years

on possession of a weapon, ten years on AWIK, and thirty years' imprisonment on the armed robbery charge.

Petitioner appealed. Following January 7, 2004, oral argument, the South Carolina Supreme Court issued a published opinion on March 1, 2004, affirming Moore's convictions and sentences. *State v. Moore*, 593 S.E.2d 608 (S.C. 2004). On March 18, 2004, the Remittitur was sent to the Spartanburg County Clerk of Court.

On March 16, 2004, Petitioner filed a counseled Petition for Stay of Execution to allow him to pursue post-conviction relief (PCR). The State did not oppose the request. On April 7, 2004, the Supreme Court of South Carolina issued an Order granting the stay and assigning the case to then-Circuit Court Judge Larry R. Patterson. Judge Patterson thereafter appointed attorneys Melissa Armstrong and Kathryn Hudgins to represent Petitioner in his state PCR proceeding; James M. Morton was later substituted for Ms. Hudgins.

On August 8, 2004, Petitioner filed an initial application for PCR. The State filed a Return, and Petitioner filed an amended application. Judge Roger L. Couch held a hearing on January 31 and February 3, 2011. On August 1, 2011, Judge Couch issued an Order dismissing the application with prejudice.

Petitioner filed a counseled petition for writ of certiorari with the South Carolina Supreme Court seeking review of the denial of his PCR application. On September 11, 2014, the Supreme Court of South Carolina denied his petition. Petitioner filed a petition for rehearing; the South Carolina Supreme Court denied that petition on October 24, 2014, and issued the Remittitur to the Clerk of Court for Spartanburg County. On October 31, 2014, Petitioner filed a petition for stay of execution with the South Carolina Supreme Court to allow him to file a

petition for writ of certiorari with the United States Supreme Court. The South Carolina Supreme Court denied the stay on December 12, 2014, and issued an execution notice to Petitioner's custodian setting Petitioner's execution date for January 9, 2015.

In the meantime, on November 20, 2014, Petitioner filed the instant case in the United States Court for the District of South Carolina. On December 12, 2014, Petitioner sought a stay of execution in this Court, which the Court granted to allow him to file a petition for writ of habeas corpus on or before August 16, 2015.

On March 23, 2015, Petitioner filed a petition for writ of certiorari with the United States Supreme Court. The United States Supreme Court denied certiorari on June 29, 2015. *Moore v. S.C.*, 135 S. Ct. 2892 (2015).

On August 14, 2015, counsel filed Petitioner's habeas petition in this Court, and, on November 16, 2015, Respondents filed a motion for summary judgment. Petitioner subsequently filed a successive PCR application in the Court of Common Pleas for Spartanburg County. Petitioner then sought a motion to stay in this Court pending exhaustion of state court remedies; the Court granted the stay on January 13, 2016. On May 11, 2017, Judge Couch issued an Order dismissing Petitioner's second state PCR application with prejudice. On June 23, 2017, the Court lifted the stay in the instant case.

As detailed above, Petitioner and Respondents then filed additional briefing on the petition for writ of habeas corpus and motion for summary judgment. In addition, Petitioner filed a motion for hearing and motion to stay, and Respondents filed a motion to strike, all of which have been fully briefed, and are ripe for decision.

## III.  STANDARDS OF REVIEW

### A)  Habeas Corpus Review

#### 1)  Exhaustion

A habeas corpus petitioner is unable to obtain relief in federal court until he has exhausted his remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (overruled on other grounds by *United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011)).  "To exhaust a claim, the petitioner must present the state court with 'both the operative facts and the controlling legal principles.'"  *Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015) (quoting *Winston v. Kelly*, 592 F.3d 535, 549 (4th Cir. 2010)).

#### 2)  Procedural Default

In general, if a state prisoner's claims would be defaulted under state procedural rules, a federal habeas court should not review those claims.  *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000).  Procedural default is an affirmative defense, which is waived if not raised by a respondent.  *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996).  An exception to the general bar against federal habeas review of procedurally defaulted state claims exists where petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

#### 3)  Deference to State Court

A federal court may not grant a petition for habeas corpus from a petitioner in state custody based upon a state court's ruling unless the state court's decision to deny the petition either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For a state court ruling to be contrary to federal law, the state court must "(1) arrive[] at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law, or (2) decide[] a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's decision is an unreasonable application of federal law if the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* For a federal court to grant a writ of habeas corpus under the unreasonable application clause, it must conclude not only the state court erred in applying federal law, but also the application was unreasonable. *Id.* at 411. The factual findings of the state court are presumed correct, and the petitioner has the burden of rebutting that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The standard of review is thus highly deferential. For this standard to apply, however, the state court's denial of the petition must have been an adjudication on the merits. *See* 28 U.S.C. § 2254(d). A state court has not made an adjudication on the merits when it makes its

decision "'on a materially incomplete record.'"  *Gordon v. Braxton*, 780 F.3d 196, 202 (4th Cir. 2015) (quoting *Kelly*, 592 F.3d at 555).  "A record may be materially incomplete 'when a state court unreasonably refuses to "permit further development of the facts" of a claim.'"  *Id.* (quoting *Winston v. Pearson*, 683 F.3d 489, 499 (4th Cir. 2012)).  Where a state court's adjudication was based upon a materially incomplete record, it would be inappropriate for the federal court to defer to that state court ruling because the ruling would not be an adjudication on the merits as required for deference under 28 U.S.C. § 2254(d).  *Kelly*, 592 F.3d at 555-56 (citations omitted).

For a claim to have been fairly presented to the state court, the petitioner must have presented evidence in support of the claim, and the state court must have "'reached a conclusion as to which [fair-minded] jurists could disagree.'"  *Gray v. Zook*, 806 F.3d at 791 (quoting *Moore v. Hardee*, 723 F.3d 488, 4999 (4th Cir. 2013)).

### 4)      Ineffective Assistance of Counsel

Defendants in criminal cases have a constitutional right to the assistance of counsel.  U.S. Const. amend. VI.  "'[T]he right to counsel is the right to the effective assistance of counsel.'"  *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

To prevail on a claim counsel was constitutionally ineffective, a defendant must show: 1) "counsel's performance was deficient," and 2) "that the deficient performance prejudiced the defense."  *Id.* at 687.  To meet the first element, a defendant must show counsel's errors rose to a level where counsel was not performing as required under the Constitution.  *Id.*  This is a difficult bar to meet as "'[t]here is a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance.'" *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015) (quoting *United States v. Higgs*, 663 F.3d 726, 739 (4th Cir. 2011)).  To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Further, even if the result of the proceeding would have been different, a court can grant relief under *Strickland* only if the result counsel obtained was "'fundamentally unfair or unreliable.'"  *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).  In conducting a *Strickland* analysis, a court may review either element first, and may cease analysis if the defendant fails to show either element.  *Strickland*, 466 U.S. at 697.

When the *Strickland* analysis is applied in the context of federal habeas, the standard of review is even more deferential.  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted).  "When § 2254(d) applies [in a *Strickland* analysis], the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id.*

### 5) *Martinez v. Ryan* Standard

Because there is no constitutional right to counsel in state PCR proceedings, a habeas petitioner cannot make an ineffective assistance of counsel claim as to such proceedings.

*Coleman*, 501 U.S. at 752 (citations omitted). However, the Supreme Court has recognized "a narrow exception: Inadequate assistance of counsel at initial-review-collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). More specifically:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding [as does South Carolina], a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington* . . . . To overcome default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim has some merit.

*Id.* at 14. If the ineffective assistance of counsel claim "is insubstantial, *i.e.* it does not have any merit or . . . is wholly without factual support," the procedural default will preclude federal habeas review. *Id.* at 16.

**B)        Summary Judgment**

"The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted under Rule 56 when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might "affect the outcome of the suit under

the governing law." *Id.* On a motion for summary judgment, all evidence must be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir. 1981)).

### C) Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1). In the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir.2005).

## IV. ANALYSIS

### A) Motion to Stay

Petitioner objects the Magistrate Judge erred in recommending Petitioner's motion to stay be denied. Petitioner claims his case should be stayed pending the United States Supreme Court's decision in *Ayestas v. Davis*, No. 16-6795 (U.S. argued October 30, 2017). According to Petitioner, *Ayestas* raises the issue central to the instant case of whether the record in a habeas action can be expanded to overcome procedural default. The Court agrees with the Magistrate

Judge.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Deciding when a stay is appropriate involves weighing competing interests. *Id*. at 254-55 (citations omitted). These interests include whether the case upon which the stay is sought would be dispositive of the instant case, judicial economy, public welfare, and the hardship involved in staying the case. *Id.* at 255-56.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) circumscribes the discretion of district courts to issue stays. *Rhines v. Weber*, 544 U.S. 269, 276 (2005). A stay in an AEDPA case, like the instant case, must "be compatible with AEDPA's purposes." *Id.* "One of [AEDPA's] purposes is to 'reduce delays in the execution of state and federal criminal sentences, particularly in capital cases.'" *Id*. (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). AEDPA also promotes the finality of state court judgments. *Id.* (citing *Duncan v. Walker*, 533 U.S. 167, 179 (2001)).

The question presented in *Ayestas* is: "Whether the Fifth Circuit erred in holding that 18 U.S.C. § 3599(f) withholds 'reasonably necessary' resources to investigate and develop an [ineffective assistance of counsel] claim that state habeas counsel forfeited, where the claimant's existing evidence does not meet the ultimate burden of proof at the time the § 3599(f) motion is made." *Ayestas*, No. 16-6795, Questions Presented, available via: https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/16-6795.html (Last accessed March 2, 2018).

13

The grounds for habeas relief raised by Petitioner here do not include any claims under 18 U.S.C. § 3599(f). Accordingly, the Court holds a stay of this case pending the decision in *Ayestas* is unwarranted, especially in light of the interests AEDPA was enacted to promote.

**B)    Petition for Writ of Habeas Corpus and Motion for Summary Judgment**

Petitioner's petition for writ of habeas corpus advances eight grounds in support. ECF No. 43. The instant Order discusses five of those grounds in depth. Petitioner withdrew Ground Seven before the Report was issued, ECF No. 95 at 52 n.33; thus, Ground Seven is no longer at issue. Petitioner fails to object to the Magistrate Judge's recommendation Respondents' motion for summary judgment be granted as to Grounds Two and Six; those Grounds are thus not specifically discussed in this Order.

**1)    Ground One**

Ground One of Petitioner's petition alleges his trial counsel were constitutionally ineffective for failing to adequately investigate and prepare a rebuttal to the State's physical evidence. ECF No. 43 at 15-17. Petitioner claims in his Traverse and Memorandum of Law in Opposition to Summary Judgment his state PCR counsel presented an inadequately developed Ground One argument to the South Carolina Supreme Court. Through the *Martinez* investigation conducted while his federal case was stayed, Petitioner averred he had uncovered new evidence in support of Ground One, and sought to have this Court consider the evidence. The new evidence included trial counsel's purported notes, ECF No. 95-1, a declaration from an expert witness with experience in forensics and crime scene construction who was not contacted prior to the trial, ECF No. 95-2, and a declaration from crime scene investigation expert Donald Girndt, ECF No. 95-3, whom trial counsel had consulted but ultimately decided not to have

14

testify at trial.

Petitioner objects the Magistrate Judge erred in recommending Ground One was fairly presented to the state PCR Court and in disallowing new evidence in support of Ground One. The Magistrate Judge suggested Petitioner's additional evidence should not be allowed because Ground One was previously raised and ruled upon in state Court, and because the new evidence fails to fundamentally alter the Ground One claim. Petitioner avers Ground One was not fairly presented because Petitioner's state PCR counsel did not present competent evidence in support of trial counsel's ineffectiveness on Ground One. Petitioner further advances his new evidence fundamentally alters Ground One, and thus should be allowed.

As noted above, the standard of review in a federal habeas proceeding is highly deferential if the state court rendered a decision on the merits. *See* 28 U.S.C. § 2254(d). Further, the factual findings of the state court are presumed correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Having reviewed the record, the Court holds the state PCR court reviewed Petitioner's Ground One on the merits. Accordingly, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

New evidence may be presented to the district court, however, where the new evidence fundamentally alters the claim that was before the state court such that the claim was not exhausted before the state court. *See Gray v. Zook*, 806 F.3d 783, 799 (4th Cir. 2015). Despite Petitioner's objection to the Magistrate Judge's reliance on the *Gray v. Zook* standard in the instant case, the Court agrees with the Magistrate Judge the standard is correctly applied here. New evidence does not fundamentally alter the claim that was before the state court where "[t]he

15

heart of the claim remains the same," such that the evidence "has perhaps strengthened the claim, but it has not 'fundamentally altered it.'" *Id.* (quotation in original).

The heart of Petitioner's state PCR claim was trial counsel were ineffective for: 1) failing to properly investigate and rebut the State's physical evidence, and 2) failing to present their own expert or evidence to rebut the State's physical evidence, or challenge admissibility. The heart of Petitioner's claim before this Court is the same. Thus, even if Petitioner's new evidence strengthens his claim, it does not fundamentally alter the claim.

Petitioner also alleges this Court should overrule the Magistrate Judge's finding "trial counsel's consultation with Donald Girndt . . . before trial discharged their duty to investigate the physical evidence. In reaching this erroneous conclusion, the Magistrate Judge ignored Girndt's affidavit," which was part of the newly presented evidence. ECF No. 140 at 9. As a preliminary matter, the Magistrate Judge did not find trial counsel's consultation with Girndt discharged their duty to investigate. *See* ECF No. 136 at 39, 45. Rather, the Magistrate Judge noted one of the reasons the state PCR court relied upon in dismissing Petitioner's claim trial counsel were ineffective for failing to retain their own crime scene expert was trial counsel retained Girndt, and consulted with him before trial, but made the objectively reasonable decision not to call Girndt at trial given his testimony would have harmed Petitioner's case. *Id.* Further, the affidavit Petitioner wishes the Court to consider is new evidence, and is inappropriate for consideration by the Court as discussed above. For those reasons, the Court declines to further analyze this objection, and the Court will overrule Petitioner's objections as to the Magistrate Judge's recommendation on Ground One.

### 2) Ground Three

Ground Three of Petitioner's petition alleges Petitioner's trial counsel were ineffective for failing to pursue a claim under *Batson v. Kentucky*, 476 U.S. 79 (1986), after the State struck the only two African-American jurors qualified to serve on the jury. ECF No. 43 at 23-27. This claim was presented to the state PCR Court, which rejected the claim on the merits. Petitioner sought to raise the issue on PCR appeal, but his appellate counsel declined to do so. Petitioner then sought to raise the issue via a pro se motion and a pro se supplemental petition for writ of certiorari filed with the South Carolina Supreme Court; that court declined to take action on the motion, and refused to accept the supplemental petition for filing.

Petitioner argues the Magistrate Judge erred in recommending Petitioner cannot overcome his procedural default of Ground Three. The Magistrate Judge suggested Petitioner's claim was not exhausted because Petitioner's *pro se* petitions to the South Carolina Supreme Court were not properly before that court. Further, the Magistrate Judge concluded the narrow exception in *Martinez* does not apply to claims of ineffective assistance of PCR appellate counsel, and, even if *Martinez* did apply, Petitioner could not meet the *Martinez/Strickland* standard because he could not show deficient performance or prejudice, and there was no fundamental miscarriage of justice. Petitioner avers his pro se efforts should prevent his appellate counsel's failures from being held against him*, Martinez* should be extended to his claim, and he can show prejudice from counsel's failure to raise his *Batson* claim.

Petitioner relies on his pro se petition to the South Carolina Supreme Court to overcome his state PCR appellate counsel's failure to raise Ground Three before that court, and thus his procedural default of Ground Three. The law, however, bars Petitioner's argument. Neither the United States nor the South Carolina Constitutions provide a right to hybrid representation. *State*

*v. Stuckey*, 508 S.E. 2d 564, 564 (S.C. 1998) (citations omitted). Petitioner was represented by counsel in his state PCR appeal; therefore, substantive documents filed in that appeal had to be submitted by counsel to be properly before the South Carolina Supreme Court. *See id.* at 564-65 (holding pro se documents submitted by a counseled petitioner were not properly before the court). Petitioner's state PCR appellate counsel neglected to raise Ground Three before the South Carolina Supreme Court; therefore, Ground Three was procedurally defaulted.

To overcome procedural default, Petitioner must show cause for the default and prejudice from the violation of federal law alleged. *Coleman*, 501 U.S. at 750. Though Petitioner avers his claim is one of ineffective assistance of trial counsel, he concedes his claim is about the failure of state PCR appellate counsel to raise his *Batson* claim, not about the failure of state PCR counsel to raise the claim. This is not the type of claim *Martinez* allows. *Martinez* is a "narrow exception," where "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 9. Petitioner further advances the equitable principles underlying habeas law should allow the *Martinez* exception to be extended to Petitioner's state PCR appellate counsel's failure to raise the *Batson* claim. This argument is likewise unsupported by case law. *See Davila v. Davis*, 137 S. Ct. 2058 (2017) (declining to extend *Martinez* to claims of ineffective assistance of appellate counsel). Because Petitioner's claim does not fall within the narrow *Martinez* exception, he fails to establish cause for the procedural default of Ground Three.

In addition to being unable to show cause for the procedural default on Ground Three, Petitioner fails to show prejudice. As analyzed in the Report, Petitioner's trial counsel made a

*Batson* motion when the State struck the only two African-Americans qualified to serve on the jury. The State provided race-neutral reasons for those strikes, and Petitioner's trial counsel declined to challenge the State's reasons as pretextual. The trial judge concluded the reasons for the contested strikes were race-neutral and denied Petitioner's *Batson* motion. This issue was raised at state PCR proceedings, and the state PCR Court specifically held Petitioner had failed to prove deficient performance or prejudice under *Strickland*.

Petitioner argues the Magistrate Judge ignored Petitioner's arguments showing the purportedly race-neutral reasons provided by the State were pretextual, and failed to address his claims under 28 U.S.C. § 2254(d). Both those arguments are unavailing. First, having reviewed Petitioner's claims regarding the allegedly race-neutral reasons being pretextual, the Court agrees with the Magistrate Judge's recommendation: there is no prejudice here. Second, federal habeas relief is unavailable where the claim has not been exhausted in the state's highest court. The Magistrate Judge here suggested, and the Court agrees, Petitioner's *Batson* claim was unexhausted, and thus correctly declined to review Petitioner's § 2254(d) claims. Because Petitioner fails to show cause for procedural default of Ground Three, and also neglects to show prejudice, the Court will overrule his objections to the Magistrate Judge's recommendation on Ground Three.

### 3) Ground Four

Ground Four of Petitioner's petition claims trial counsel were ineffective for failing to challenge the State's decision to seek the death penalty as arbitrary and disproportionate to the crime with which Petitioner was charged. ECF No. 43 at 27-30. The Magistrate Judge suggested Ground Four was procedurally defaulted, and Petitioner could not meet the *Martinez*

standard to overcome the procedural default because he failed to show the State engaged in selective prosecution and, thus failed to establish his underlying ineffective assistance of trial counsel claim was substantial. Petitioner objects his Ground Four claim was not a selective prosecution claim. He clarifies he "does not allege that the prosecutor intentionally based his charging decision on [Petitioner's] or the victim Mahoney's race [Petitioner is African-American; Mahoney was Caucasian] but alleged the imposition of the death penalty was arbitrary and disproportionate in his case in violation of the Eighth Amendment." ECF No. 140 at 15. In additional briefing, Respondents aver even under an Eighth Amendment standard, Petitioner fails to show the cause and prejudice necessary under *Martinez/Strickland* to overcome his Ground Four procedural default. The Court agrees with the Magistrate Judge and Respondents.

As a preliminary matter, a state prosecutor has largely unfettered discretion in prosecuting his case.

> In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."

*Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (footnote omitted) (quoting *Oyler v. Boles*, 368 U.S. 448 (1962)); *see also In re Richland Cty. Magistrate's Court*, 699 S.E.2d 161, 163 (S.C. 2010) (holding under South Carolina law, the prosecutor has "unfettered discretion to prosecute," which includes decisions about whether to prosecute, what evidence to present, and negotiating plea bargains).

Additionally, Petitioner has failed to submit, and the Court has been unable to find, any case law stating the South Carolina death penalty statute is constitutionally invalid. Petitioner also explicitly avers he is not advancing a claim the prosecutor made his charging decision based upon race.

To the extent Petitioner claims imposing the death penalty in his case was arbitrary and disproportionate in violation of the Eighth Amendment, that claim fails. In *McCleskey v. Kemp*, 481 U.S. 279 (1987), the United States Supreme Court held capital habeas petitioner McCleskey was unable to argue his death penalty sentence was disproportionate under the Eighth Amendment. The *McCleskey* court held McCleskey neglected to deny the murder at issue was committed during a planned robbery, which was an act for which the death penalty could be imposed under Georgia's capital sentencing scheme. *Id.* at 306.

Like Georgia's statute, South Carolina law allows for imposition of the death penalty where a murder is committed during the course of an armed robbery. S.C. Code. Ann. § 16-3-20(c)(1)(e). Petitioner advances his case differs from other death penalty cases because the weapons involved were originally in the control of the victim. To the extent Petitioner seeks to argue the murder was thus not committed during an armed robbery, his claim is foreclosed by South Carolina law. *See State v. Damon*, 328 S.E.2d 628, 631 (S.C. 1985) (holding the State need not show the aggravating circumstance came before the murder for it to be an aggravating circumstance) (overruled on other grounds by *State v. Torrence*, 406 S.E.2d 315 (S.C. 1991)). This Court is bound by the South Carolina Supreme Court's interpretation of the South Carolina statutory aggravating factors for imposing the death penalty. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Petitioner also advances the death penalty was disproportionate and arbitrary in his case because no death penalty case in South Carolina has similar facts to his. This argument, likewise, fails. *See McCleskey*, 481 U.S. 279, 306 (1987) (Petitioner "cannot base a constitutional claim on an argument that his case differs from other cases in which defendants *did* receive the death penalty. On automatic appeal, the Georgia Supreme Court found that McCleskey's death sentence was not disproportionate to other death sentences imposed in the State.") (citation omitted). As in *McCleskey*, the South Carolina Supreme Court here held on direct appeal "[Petitioner's] death sentence was not the result of passion, prejudice, or any other arbitrary factor, and the jury's finding of aggravating circumstances is supported by the evidence. Further, the death penalty is not excessive or disproportionate to the penalty imposed in similar capital cases." *Moore*, 593 S.E.2d at 612.

Finally, Petitioner argues defendants in the same circuit who committed worse crimes than he were not sentenced to death. This claim is likewise unavailing. *See McCleskey*, 481 U.S. at 306-07 ("absent a showing that the Georgia capital punishment system operates in an arbitrary and capricious manner, McCleskey cannot prove a constitutional violation by demonstrating that other defendants who may be similarly situated did *not* receive the death penalty."). As noted above, the South Carolina death penalty statute has not been held to be constitutionally deficient.

For the foregoing reasons, Petitioner is unable to show his claim trial counsel were ineffective for failing to challenge the State's decision to seek the death penalty has merit. As a result, Petitioner is unable to demonstrate cause under *Martinez* to overcome procedural default on Ground Four. Because Petitioner fails to establish cause, the Court declines to address the

issue of prejudice.  *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").  Thus, the Court will overrule Petitioner's objections as to Ground Four.

### 4) Ground Five

Ground Five of Petitioner's petition alleges trial counsel were ineffective by failing to adequately investigate and present mitigating evidence.  ECF No. 43 at 30-35.  Petitioner objects the Magistrate Judge erred in disallowing new evidence in support of Ground Five.

The Magistrate Judge suggested Respondents could not have waived their objection to the introduction of new evidence.  The Magistrate Judge also recommended the additional evidence should not be allowed because Ground Five was previously raised and ruled upon in state court, and because the new evidence did not fundamentally alter the Ground Five claim. Petitioner avers Respondents waived their objection to the introduction of new evidence. Petitioner further advances Ground Five was not decided on the merits in state court because Petitioner's state PCR counsel did not present evidence in support of trial counsel's ineffectiveness on Ground Five, and Petitioner's new evidence fundamentally alters Ground Five.

As a preliminary matter, the Court agrees with the Magistrate Judge: Respondents could not have waived procedural default.  Respondents filed their motion for summary judgment and return and memorandum in opposition to Petitioner's petition for writ of habeas corpus on November 16, 2015.  ECF Nos. 56, 57.  Approximately two months later, before Petitioner responded to the motion for summary judgment, the Court stayed the case.  ECF No. 67.  The

Court lifted the stay some seventeen months later, on June 23, 2017. ECF No. 91. Petitioner then responded to the motion for summary judgment, providing new evidence in support of his petition. ECF No. 95. Petitioner argued Respondents waived procedural default as to the new evidence because they failed to argue in their return new evidence in support of Ground Five was defaulted because it had not been presented to the state court. *Id.* at 42 (citing *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010)). Respondents, however, could not, in their November 2015 return, have waived objection to evidence newly presented in June 2017.

Petitioner's remaining objections to the Magistrate Judge's recommendation on Ground Five fail for the same reasons his objections to the Magistrate Judge's recommendation on Ground One fail. First, federal habeas court review is highly deferential if the state court rendered a decision on the merits, and the state court's findings on the facts are presumed correct unless rebutted with clear and convincing evidence. *See* 28 U.S.C. §§ 2254(d)-(e)(1). Having reviewed the record, the Court holds the state PCR court reviewed Petitioner's Ground Five on the merits.

When the state court adjudicated the claim on the merits, federal habeas review is "limited to the record that was before the state court." *Cullen*, 563 U.S. at 181. A district court may, however, review new evidence where that evidence fundamentally alters the claim before the state court such that the claim was not exhausted before the state court. *See Gray v. Zook*, 806 F.3d at 799. A claim is not fundamentally altered if the evidence "has perhaps strengthened the claim," but "[t]he heart of the claim remains the same." *Id.*

The heart of Petitioner's state PCR claim was trial counsel were ineffective for failing to investigate and present mitigation evidence. Specifically, Petitioner's state PCR claim was trial

24

counsel failed to conduct an investigation in Michigan, where Petitioner was raised, and that such an investigation would have revealed Petitioner's good character and struggle with addiction, and would have provided friends or relatives willing to testify on Petitioner's behalf. That claim is also at the heart of Petitioner's Ground Five before this Court. Assuming *arguendo* Petitioner's new evidence strengthens his claim, it does not fundamentally alter it. For the above reasons, the Court will overrule Petitioner's objection to the Magistrate Judge's recommendation on Ground Five.

### 5) Ground Eight

In Ground Eight of his petition, Petitioner alleges trial counsel were ineffective for failing to object to the application of the statutory aggravating circumstances permitting the State to seek the death penalty in his case. ECF No. 43 at 39-40. The Magistrate Judge suggested Ground Eight is procedurally defaulted and the Court is unable to excuse the procedural default under *Martinez* because Petitioner's underlying ineffective assistance of trial counsel claim lacks merit. Petitioner concedes the Magistrate Judge properly suggested under South Carolina law armed robbery can be committed even when the perpetrator becomes armed during the robbery, and armed robbery can be a statutory aggravating factor in a death penalty case even when the robbery is not completed until after the murder. ECF No. 140 at 16. Petitioner's sole basis for objecting to the Magistrate Judge's recommendation on Ground Eight is Petitioner did not form the intent to rob until after committing the murder, thus the murder was not committed while in the commission of a robbery, nor for the purpose of monetary gain. *Id.* at 16-18.

Under South Carolina law, when the State seeks the death penalty for a murder charge, the Defendant may be sentenced to death only when one or more statutory aggravating factors is

found beyond a reasonable doubt. S.C. Code Ann. §§ 16-3-20(A)-(B). Those aggravating factors include: (1) "[t]he murder was committed while in the commission of . . . robbery while armed with a deadly weapon," *id.* § 16-3-20(C)(a)(1)(e), and (2) "[t]he offender committed the murder for himself or another for the purpose of receiving money or a thing of value," *id.* § 16-3-20(C)(a)(4). Moore's state PCR counsel waived a claim based on an additional statutory aggravating factor at the state PCR proceeding, and the PCR Court acknowledged that waiver. ECF No. 63-9 at 73:19-74:6.

South Carolina case law precludes Petitioner's objection as to the murder not being committed while in the commission of a robbery. In *State v. Damon*, the South Carolina Supreme Court rejected the very argument Petitioner advances here: the intent to rob came after the murder, and thus the statutory aggravating circumstances did not apply. *State v. Damon*, 328 S.E.2d 628, 631 (S.C. 1985) ("The appellant contends his motive for the murders was not robbery; that he stole the victims' property as an afterthought. He argues, therefore, the state could not rely on armed robbery or larceny as an aggravating circumstance. We disagree. In South Carolina, there is no requirement that the state prove motive.") (overruled on other grounds by *State v. Torrence*, 406 S.E.2d 315 (S.C. 1991)). This Court is bound by the South Carolina Supreme Court's interpretation of the South Carolina statutory aggravating factors. *Estelle v. McGuire*, 502 U.S. at 67-68 ("Today we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citations omitted)).

Even assuming Petitioner was correct the statutory aggravating factors he contests in

Ground Eight were improperly applied in his case, he would still fail to show prejudice arising from trial counsel neglecting to raise the claim. At Petitioner's trial, the jury found the existence beyond a reasonable doubt of all three aggravating factors charged. One of those factors was: "offender by his act of murder knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which normally would be hazardous to the lives of more than one person." S.C. Code Ann. § 16-3-20(C)(a)(3). When Petitioner formed the intent to rob relative to committing the murder would have no impact on this statutory aggravating factor, and the existence of this factor alone would be sufficient to support the imposition of the death penalty. S.C. Code Ann. § 16-3-20(A). For the above reasons, the Court will overrule Petitioner's objections to the Magistrate Judge's recommendation on Ground Eight.

### C)     Motion for Hearing

Petitioner objects the Magistrate Judge erred in suggesting Petitioner's motion for hearing be denied. Petitioner requests a hearing to show his PCR counsel were ineffective for failing to raise Grounds One, Four, Five, Eight, and possibly Three, and to overcome procedural default under *Martinez*. Petitioner notes he "assumes the Magistrate Judge recommended denying Moore a hearing based on the finding that Grounds 1 and 5 were fairly presented to the South Carolina courts and the remaining claims had no merit." ECF No. 140 at 18. Because the Magistrate Judge made incorrect recommendations on these Grounds, Petitioner argues, the Court should grant him a hearing. *Id*. As analyzed above, however, this Court agrees with the Magistrate Judge's recommendations. For that reason, the Court will overrule Petitioner's objection to the Magistrate Judge's suggestion Petitioner's motion for hearing be denied.

## V. CONCLUSION

In conclusion, for the reasons stated above, the Court overrules Petitioner's objections, adopts the Report, and incorporates it within. Accordingly, Respondents' motion to strike, ECF No. 106, is **GRANTED IN PART**, and **DENIED IN PART**, to allow the Court to consider the Miller and Petty affidavits. Respondents' motion for summary judgment, ECF No. 57, is **GRANTED**, and Petitioner's petition for writ of habeas corpus, ECF No. 43, is **DENIED**. Petitioner's motion for a hearing, ECF No. 96, and motion to stay proceedings, ECF No. 117, are **DENIED**.

**IT IS SO ORDERED**.

Signed this 21st day of March, 2018, in Columbia, South Carolina.

s/ Mary Geiger Lewis_____
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE